May I proceed? Good afternoon, Your Honors. May it please the Court, Marie Emanuel Gavigan on behalf of the Defendant Appellant, State of Hawaii Department of Education, Board of Education. Your Honors, we're here for review of this case, and we're looking for the conclusion that the judgment will not stand in the case. And to that end, we have presented three issues for review. And we believe that the conclusion of those, after review of those issues, that the judgment should not stand. The three main issues are, first of all, whether the District Court erred with regard to two evidentiary rulings. One has to do with hearsay testimony. The other was improper cross-examination of one of the State's witnesses. The second relates to the issue of whether it was error to allow Plaintiff Mariana's treating psychologist, Dr. Lynch, to testify as an expert witness. And then the third issue that we have raised is whether it was error for the District Court to deny the State's post-verdict renewed motion for judgment as a matter of law. I'd like to start with that third issue first, the that issue that all the District Court's evidentiary rulings were correct? In other words, a little bit in your briefs, there's a back and forth. So let's start out with the assumption that we're not going to overturn any of the District Court's evidentiary rulings. I'm not saying that's the truth. I'm just saying, let's assume that all the evidence that the District Court allowed in appropriately came in. Could you address under those circumstances why you think that was insufficient? Or if there was error, it was harmless. Or if it was harmless. But one way or another, let's assume that we don't find reversible error with respect to the District Court's rulings. The evidentiary and the expert? And the expert. All those. So given that's all in the record and for purposes of discussion, we treat it as evidence that's either appropriately in the record or harmlessly in the record. Why wasn't there enough evidence to go to a jury here? Well, Your Honor, it's not so much that it wasn't enough evidence to go to the jury. Actually, the basis of our post-trial motion at that after verdict was that because the jury found that Ms. Lindquist, the individual, had not acted with malice, she was given the conditional privilege, the qualified privilege, the state Let me make it easier for you. As I understand the Hawaii law on this topic, is that respondeat superior liability can't be imposed on the state unless, on the basis of a judgment against an employee, unless the employee acted with what the state courts call malice. Correct? Yes, Your Honor. Okay. And so therefore, the judge, I think, correctly recognized in this case that you couldn't impose judgment on the state simply because of Ms. Lindquist's liability. Why couldn't judgment be imposed on the state because of the negligence of the state itself? Well, Your Honor, the state only acts through its employees. And so therefore, there would have had to be . . . So is it your position that they have to sue every employee who was negligent? Well, not necessarily, Your Honor, but in this case, they did sue individuals. One was given judgment early on as a result of a motion, and Ms. Lindquist was the only one that remained. And as . . . But there were other state employees who were actors in this situation, too. Not to the extent of Ms. Lindquist, though, Your Honor. No, but, you know, it could be argued, you know, their actions were a sufficient basis on which to predicate the state liability. Your Honor, I think if we look at that, we will see . . . If we look at those other individuals, there were only a few. One that was mentioned by the district judge was D. Jamada, and he actually did not have anything to do with it because he was the dean of students. He was reliable for . . . I mean, he was responsible for discipline. He was what, like a vice principal or principal? He was a vice principal. He called himself dean of students. Go ahead. Dean of students. One of the others was Jerry Martin, who was also a vice principal. Her role . . . Do we have to focus on . . . That's my question. Let's assume that the plaintiff in this case, because it's the mother, I guess, had sent a notice to the Board of Education that said, I think Mr. . . . I think Tom is dangerous. I think he's done some of this stuff in the past, and you ought to take appropriate measures to make sure they don't happen in the future. That message was received, but nobody acted on it. Would that be actionable negligence on the part of the state? That's a completely different circumstance. Well, I'm not sure it's . . . They pleaded in this case, failure to appropriately supervise Tom. They put in evidence that his previous . . . It may not . . . There was evidence. It may not have been . . . You may have contested that his previous conduct was brought to the attention of the authorities, and it appears that no specific plan was developed to deal with him. Why isn't that enough without responding at superior to impose liability on the state? Your Honor, see, that's one of the issues in the case, and that's that there was no previous conduct that the state was put on to deal with Tom's case. It says she attended a meeting in which she told people about it. I understand that, Your Honor, but if you look at the timeline, the conduct that she alleges she complained about could not have happened at that previous meeting, and the reason is that she and everyone agree that this alleged conduct happened when the students went off campus. There was only one time that these students went off campus. That one time was December 4th of 2012, and so the meeting that occurred was in November of 2012, so nothing could have happened at the time of that meeting. Now you're making a factual argument. I just want to make sure that I can distinguish your legal argument from your factual one. Again, I'm asking you to assume a lot, but let's assume that at some point previous to this incident, somebody went to the school and said, this kid is dangerous and here are some facts. Put aside when these various incidents occurred, could the school be liable under those circumstances in the absence of any specific negligence by an individual? I think in that case, yes, Your Honor. And your argument is that this record doesn't support that finding because of what you're saying? That is correct, Your Honor. So if that were the case, and if we think that issue was contested on this record, there was evidence on both sides, there would be a basis for the school's liability, would there not? If, well, if you believe that this incident, this other incident, the groping incident happened before that meeting. Then that's why I want to ask you, does it matter whether it occurred? In other words, if the mother went to the school board and said, I think this young man is dangerous and you need to protect my daughter against him, even if her basis for thinking so weren't accurate, would they have some duty at that point to do something? If that had happened, yes, but we contest that, of course, we contest that that happened. Well, you don't contest that she went to the board before the incident that's involved in this case happened, do you? They had an IEP meeting, clearly they did. Sure, and that she went to, and at that meeting she said, she made her accusations against this young man. That's what she testified. Okay, and so given that, I'm trying to figure out what difference it makes whether she was right or wrong, because she was certainly prescient. Well, because, Your Honor, our position is because it was a discreet event, a certain discreet event, and she admits that it happened in December, therefore it couldn't have happened, and the point is that we get to the issue of notice. Did the school have notice about anything Rustin did? And all the other testimony that was there was that Rustin was a model student, he was very trustworthy, he was kind, nobody ever, ever had any concerns with this student. But your position is that they had notice, but it wasn't accurate notice. What did she say at the November meeting? Your Honor, she alleges that she, or she testified that she told them about a groping incident, she was concerned about this groping incident. The concern that was shared by the teacher was that Ms. Lindquist had observed other students, regular education students, making fun of Mariana, and she had a concern about that, and so they discussed that concern at the meeting because the special education teacher wanted to make sure Mariana was protected from these girls who were, we'd call them mean girls perhaps, so that's what was discussed according to Ms. Lindquist. But the mother testified that she had told them about this groping incident. Yes, she did testify. So, and there's no doubt, you don't dispute that, you don't dispute that she told them about this incident before the later event occurred, before the event that's the subject of this lawsuit. We do, Your Honor, because no one, no one ever had any, no one can recall her talking about a groping incident. No, no one can recall, it doesn't matter. For purposes of the record, of sufficiency of the evidence, why isn't her testimony enough? Well, Your Honor, because, well, I'm basing it on the facts, and again, I go back to the timeline. No, that's why I'm, so what you're saying, and I think we're saying the same thing, just want to make sure it's your position, is that even if the mother did tell her, the board before then, that there was reason to worry about this young man, it wasn't negligence for them not to take further action on it because her, her concerns were wrong because she had the wrong timeline. I'm sorry, Your Honor, I'm having a problem because it's all factual. Could you please Sure, it's all factual. I'll try to work it through and say what you've told me. So let's take a very different case. A mother goes to the school board and says, a young man in my daughter's class has been making sexual advances toward her. I want you to make sure this doesn't occur again in the future. And the board does nothing about it. And then something bad occurs. You'd agree that there would be evidence of negligence? I agree that they would have had, somebody would have been notified of that. So now we have a case in which you say, well, the mother says she says that, but nobody else remembers it. And as to that, I say, those are the kinds of credibility issues that we ask juries to resolve. The next thing you say is, well, when she said it, it couldn't have been true because these folks hadn't been left alone with each other previous to that point. So is it, is it, is it that point that, that on what you rely that for your insufficiency for your JMOL argument? Yes, Your Honor. Okay. Yes. Thank you. Is that all there? Oh, go ahead. No. Is that all there is to your JMOL argument? Or is there more? Oh, no, there is more, Your Honor. Well, you got about two minutes. Would you give us just a short version? I had wanted to reserve. I may reserve just a short amount of time. We'll make sure you get a chance to say everything you need to say. And Judge, she was asking for something else. Let me get to that in a minute. If I interject, I want to stay with this for just a minute. You're saying that she said that she alleges that there's a groping incident in November, in the November meeting. You're saying that that was, that the groping incident actually occurred in December. We're saying that there was no groping incident, but the only time it could have occurred would have been December 4th. And so why do you say that's the only time it could have occurred? Because everybody testified that this alleged groping incident occurred when the students went off campus to buy noodles. Is that what the mother says? She says it occurred when they went off campus? She admitted that. She did. And everybody admits that they went off campus December 4th. Okay. So what you're saying is, I think then, not that, what you're saying is she's lying. That is to say, she didn't say that in November because she couldn't have said it in November because it hadn't happened yet. That's correct, Your Honor. She couldn't have said it in November. It hadn't happened. That is correct. And so there's evidence in the record that shows she's lying. Well. Or misremembering. Misremembering, confused about dates, whatever. But definitely it's not accurate, her testimony. Okay. Well, there's a reason for the jury then to disbelieve it. Okay, I'm sorry. Yes, it is. I didn't mean to judge Tashima. No, no. You said your number one argument was why the court erred in denying your Jam Oil motion. Okay. Now, whatever you want to add to that, that you can in a minute or two, would you do that? Okay. That, because, well I think it goes back to because the state is, because the linguist is immune, then the state is immune from liability. And that was one of the points that we made. Well, but then I asked you, well, there are other employees involved, too. State employees. Well. Who could have been the basis of the jury's finding that the state was liable, right? The ones that were mentioned in the judge's order would have been the Dean of Students, and he had no notice of anything. The other was Jerry Martin. She was a vice principal. She attended the IEP meeting, but otherwise she had no further connection with him. And then I think one or two of the assistants in the classroom. Yeah, the teacher's aides, or whatever you call them. Teacher's aides. Yes. I mean, there was somebody who was supposed to make sure they didn't go to the restroom together, right? At the same time. They did, well, and they could have gone at the same time because they didn't go to the same bathroom. So, they, the teacher and the teacher's aides were not on notice. They didn't know that he, that Rustin would have gone to that same restroom because he'd never used it before, as far as they knew. So they had no notice of that. That was a surprise to them when they found out he had gone there. All right. And the teacher, because Mariana had gone, they aren't going to tell students they can't go to the restroom, and he, Rustin, when he asked at the same time, apparently decided... So, you don't think the teacher's aides furnish a basis for holding the state liable? I don't, Your Honor. That's correct. All right. And neither do the principals or the vice-principals. Well, it's the two vice-principals, yes. All right. Now, so getting back to Judge Hurwitz's point, you do agree that maybe, at least in some limited circumstances, the state can be held liable even that, even though there's no predicate of a state employee being negligent, in certain limited circumstances. Is that right? Yes, I agree, Your Honor, in the example that Judge Hurwitz gave, yes. All right. Let's hear from the other side. We will give you a chance to respond. Thank you very much. Sure. May it please the Court, Peter Shea for Angelica Kahako and Mariana Harris. This Court must, maybe that's too strong, should affirm the trial court's, district court's order denying the state's motion for, renewed motion for JMOL, as well as affirming the jury trial's verdict, the jury's verdict, for the following reasons. Let me start with the argument that was made by the State Council. The liability issue starts and ends with the fact that Lindquist knew about the prior incident, the prior groping incident on campus after they went off campus and came back. She admitted that in her deposition testimony. She admitted that in her cross-examination by us in the plaintiff's case in chief. She admitted that in a 252 statement to the police, in which she said, something like this happened six months before. And she made that statement in April of 2000. But the jury found that Lindquist's culpability was not sufficient to hold her liable, right? They found that she, they didn't act, that they didn't find that she acted with malice. Right. And under the statute, she has to be, act maliciously in order to be held liable, right? Yes. So she's not liable, right? Yes. So if she's not liable, how can you hold the state liable? There's a different standard of proof. Well, what's the standard for the state? The standard for the state is negligence, not willful acts. But she can't be held liable, the state can't be held liable because of her negligence, can it? I'm sorry, can you say that again? The state can't be held liable because of her negligence as her employer. We take the position that the state can't be held liable for the 5% that the jury found that Lindquist was liable for. Okay. But that's not the question. I'm going to try to be more precise. Can liability be imposed on the state because of the negligence of Ms. Lindquist? Not in this case, Your Honor. Right. Okay. So we agree. So now you've got, so you don't win because she was found liable, because she was found negligent. Why do you win then? Because of the negligent acts of the other members of the administration, including Jerry Martin, Patricia Sofa, Joanne DeCambra. Joanne DeCambra and Sofa were teacher's aides in that independent case. So now we get to the point that I'm interested in, Judge Tashima was asking you about. Put aside this issue of whether the school was put on notice for a second. I want to get back to that. If you can't impose liability on the state because Ms. Lindquist didn't act with malice, do you sort of get, do you get a pass on the other people, or do you have to show that they acted with malice too? No. In other words, you say five people acted with, five people were negligent here. I'm only going to sue one of them. And the jury says, well, as to her, no malice. What do you have to show about the other four? All we have to show is that they were negligent in supervising and monitoring Mariana and Rustin. You don't have to show that they acted maliciously in order to hold a state? No. You don't have to, that's not to make sense. Yeah. Isn't that what the statute requires? The statute requires that to hold an individual employee, state employee. But to hold a state liable. No, to hold an employee liable. The Act, Willful Act is relevant only with respect to conditional privilege. Conditional privilege is available to an employee that's being sued if evidence shows that they acted willfully. So if you're not being sued, then the privilege doesn't come into effect? Correct. Is that your view? That's our position. Now that's a separate issue from the other one we've talked about. So help us with the record. There seems to be some conflict between you and your colleague about who knew what when. It seems to me there's evidence in the record, and I don't think anybody disputes that, that your client, the mother, says she went to an IEP meeting and said some things to people about a previous groping incident. What evidence is there, and I think your colleague says, but she also admitted it couldn't have happened at the time that she told people about it. Now you say, Lindquist says it happened six months before. Tell us what the record, what's the evidence in the record, one way or the other on this? The evidence in the record is number one, Lindquist herself testified in our case-in-chief during cross-examination that she recalls discussing the prior groping incident with Mrs. Kawahako, the mother, at the November IEP meeting, November 2012 IEP meeting. Now she recalls that the mother said it occurred, or does she recall the discussion? Does she recall that the incident occurred before the date of that meeting, or simply that the mother spoke about the incident? She acknowledged that at the IEP meeting, that groping incident was discussed. Right. But you're... That means that if the groping incident was discussed, apparently there was some incident that the mother characterized as groping that took place before the November meeting. Yes. And that's why I wanted to get to see where you and your colleague differed. She says, well, it turns out it couldn't have occurred before the November meeting, because everybody admitted it occurred on a time when they were off campus together, and that didn't occur until December. Well, the record's a little fuzzy on that. We think that the mother may have been mistaken as to the date of that groping incident, whether it was November or December, but that's cleared up by the fact that Ms. Lindquist herself acknowledged discussing the groping incident at the November 2019 meeting. Okay, so now let's assume that they did discuss it, but upon investigation, the state officials could have determined it couldn't have happened, because the incident she was describing was on a trip off campus together. It didn't happen until December. Would that make any difference in your analysis of the case? I don't think so, Your Honor. First of all, I don't think there was an investigation of what happened, of when the groping incident happened. I think their position about the groping incident happening in December was based purely on the mother's prior testimony. Our position is that there was some confusion as to the actual time of the occurrence, but that's cleared up by the fact that she later remembered that it was in November. She brought it up in November, and that was the reason she asked for the meeting, for the IEP meeting, to ask for a one-to-one supervision of her daughter, because of that. All right, now, assuming, and I guess there's evidence, assuming that the groping incident was discussed at, I guess, was that the November IEP meeting? Yes. Right now, who would have had notice of that? In other words, who went to the IEP meeting from the school? The entire IEP team, which consisted of Ms. Lindquist, Jerry Martin, and, I believe, one of the teacher's aides, either... But the vice principal, Jerry Martin, was there. Jerry Martin was there, yes. And that was noted by the district court in his order denying the motion for KMOL. Okay. So, the vice principal, I mean, there is evidence in the record that the vice principal had notice of a prior groping incident, right? Yes. All right, now, do you know what the vice principal's reaction was to gaining that knowledge? Is there anything in the record about that? There's nothing in the record. There's no evidence that the vice principal took any action based on that notice. It didn't issue any directives to provide a one-to-one supervision for both kids. The mother's request for one-to-one supervision was denied at that IEP meeting. She continued to fight for the one-to-one supervision throughout, but it wasn't until after the April 18, 2013, incident that the school all of a sudden said, okay, we'll give you the one-to-one. Okay. The other point I want to emphasize, which I mentioned about five minutes ago, and I see that I have five minutes left, is that Ms. Lindquist acknowledged in her testimony at trial that she wrote in a written statement to the police on the day of the incident, she wrote that she recalled that something similar had happened between these two kids six months before. She wrote that on April 18, 2013. If we go six months back, that puts it back in November of 2012. So that's another piece of that. And that's why I was asking you the question before. Did she have first-hand knowledge of that, or did she only recall because the mother had told her? In her 252, the way she wrote that statement, it seemed like she had independent knowledge of that. It didn't say where she got the information from. She didn't say she got it from the mother. All she said was, I remember something similar had happened six months before. Six months before April of 2013 puts us back in November of 2012. All right. Now, in spite of the fact that the record shows she had knowledge of the prior incident, the jury still found that Ms. Lindquist didn't act with malice. Right? Right. So how would the fact that other state employees might have had the same knowledge that Ms. Lindquist had support a finding of malice, if it doesn't support a finding of malice against her? The law of conditional privilege only applies to the employee who is being sued. If an employee is not being sued, the standard of proof is not willful act of . . . If you had not sued Ms. Lindquist, are you saying that the state could be held liable for her negligence? Yes. Here's how I understand Hawaii law, although you can correct me or the other side can correct me if I've got it wrong, that if you sue a state employee and you recover from the state employee because you've shown malice, which under Hawaii law includes recklessness, you can get responded as superior because you've shown malice. In other words, that automatically means that the state is liable because you found malice by the employee. But that doesn't necessarily mean you cannot find liability against the state in the absence of malice. It only means that if you found malice, you get it automatically. If you have not found malice, you can find negligence on the part of the state by other mechanisms. Yes. Is that the state of the law in Hawaii? Either side can correct me on the state of the law in Hawaii on this point. As far as I know of the state of the law of the state of Hawaii is that any claim of negligence against a state agency or a city agency will survive if you prove that their agents or employees or representatives acted with negligence. But as soon as you sue one of the employees individually, they are entitled to a qualified immunity and that kicks it up to a proof of willful act. But there's something else here and that's just the one layer on top of this that makes it complicated. It seems to me you both agree that when the employee is found to have acted within the conditional privilege, which is to say not maliciously, liability cannot be held liable. Our position is that liability cannot be held liable. Cases cited by both sides from the Hawaii Supreme Court would say if you're only seeking to do it on respondeat superior, that when the employee is found not to have acted with malice, then the state can't be held liable for the employee's negligence. Isn't that the law in Hawaii? That is true. I would like to make two points, Your Honor. First, we didn't argue, we didn't claim responde superior. No, I understand. I'm just like Judge Fletcher. I'm trying to make sure that my understanding of Hawaii law is correct. Is that a correct statement? To the extent that... It may not be your case. He was found liable for 5%. He was found 5% liable. So that 5% cannot be... The state's not liable for that 5%. That's our position. Can the state be found 95% liable because of her non-malicious negligent acts? I believe so. If we, because we take the position, but we're not basing our verdict on her act. I understand. I understand that you may or may not, it may or may not matter to this case, but I'm interested in answering that question. Can the state be found 95% liable simply because Ms. Lindquist was liable? Solely on her conduct? Yeah. Solely on her conduct, for the 5%, I would say no. I see you have five seconds left. No, it's counting up now. You owe us, you're in debt, 10 seconds, 11, 12. And so I just want to wrap things up and... If you'd like to sum up, that would be... Deny the state's appeal and affirm the jury's verdict. Thank you. If you'd put two minutes on the clock to start, let's see what happens. Thank you. Thank you. I want to go back to something that my colleague said about Ms. Lindquist acknowledged in her testimony at trial that something similar had happened to these kids about six months ago, and that was in her police statement, which is called the 252. She was asked about that, and she said that it wasn't a similar incident. What had happened was, and it was around the time that the kids had gone off campus, somebody, and she doesn't remember who, whether it was a security guard or another student or whatever, told her that they had seen Mariana and Rustin together, and there was something that Ms. Lindquist thought was inappropriate, whether it was holding hands, or they had their arms around each other, or something similar to that. And Ms. Lindquist felt that it was inappropriate because these are two special education students, and she always told her students, you don't show any affection to each other. You be friends. And that was what her concern was in that instance, not that it was a groping incident, because she did deny that she knew that there were any groping incidents. So I just wanted to make that clear. That was Ms. Lindquist's testimony at trial. She's very clear on that. And Mr. Shea said that there was evidence in the record that the vice principal knew of a prior groping incident. I don't know if he was referring to Mr. Shimada or Ms. Martin, but neither one of them indicated that there was any, that they had any evidence of that. Was Mr. Martin at that November meeting? That's what we just heard from your adversary. I'm sorry? Was Mr. Martin at that November meeting? Ms. Martin was there, yes. Ms. Martin? Ms. Martin, yes. She was there. Mr. Shimada was not. Okay. Okay. And I want to go back to address one matter, that if there is malice of an employee, then is the state automatically liable? I don't think you can make a generalized statement such as that, because if an employee acts with malice, then you have to analyze whether they were acting within the course and scope of their employment. Because if they are not, then clearly the state, no employer could be held liable for that. So I did want to mention that. But what I was after, and I'm trying to figure out what Hawaii law says, is within the scope of one's employment, if one can be shown to have acted with malice, then there is respondent superior against the state automatically. But does, I don't think under Hawaii law, in the absence of a showing of malice on the part of an independent employee, you cannot get liability against the state. It's just that if you can show malice, that's automatic liability. Do you understand the difference? I'm not sure I do, Your Honor, because it would depend again, I think, on whether the person who acted with malice was in the course and scope. I mean, if you can act with malice and be in the course and scope, then yes, I would agree there would be automatic . . . Let me phrase, Judge. I'm interested in the answer to Judge Fletcher's question, too, and I thought I understood the answer. Now I'm not sure I did. Let's assume you have a state employee acting within the scope of her employment, who's not a defendant in the case, who acts without malice. Can the state be liable for because she was negligent? And again, if that's within the allegations of the complaint . . . Yes. I believe yes, that would be . . . That was the point I needed to get clarified. Yep. Yep. Okay. I got it. Okay. I didn't get to the other part of the argument about the hearsay testimony and Dr. Lynch, which I felt was important, but I . . . It's well briefed. It's well briefed. We've got the point on it. Okay. Thank you. Thank both sides for their helpful arguments. Thank you very much. The case of Kauhaku v. State of Hawaii Board of Education now submitted for decision.
judges: Tashima, W. Fletcher, Hurwitz